E-FILED
Tuesday, 27 March, 2012  03:33:41 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **BILLY ANDREW SPEAGLE, JR.,**           )<br>                                                               )<br>            **Plaintiff,**                               )<br>                                                               )<br>   v.                                                        )<br>                                                               )<br>**C. STEVE FERGUSON, DUANE DETERS,** )<br>**DARRELL COX, Individually and as**        )<br>**Sheriff of Coles County, COLES COUNTY** )<br>**SHERIFF'S OFFICE, and**                       )<br>**COLES COUNTY,**                                  )<br>                                                               )<br>            **Defendants.**                             ) | **Case No. 10-2040** |

# OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#52) filed by Defendants C. Steve Ferguson ("Ferguson") and Duane Deters ("Deters"), and the Motion for Summary Judgment (#53) filed by Defendants Darrell Cox ("Cox"), Coles County Sheriff's Office ("Sheriff's Office") and Coles County. This court has carefully reviewed the arguments and supporting documents filed by the parties. Following this careful and thorough review, Defendants' Motions for Summary Judgment (#52, #53) are GRANTED.

# FACTS[1]

## I. Police Investigation into Allegations of Sexual Assault

In 1999, the Illinois State Police conducted an investigation into allegations by C. F.[2] that she had been sexually abused by the Plaintiff, Billy Andrew Speagle, Jr. This investigation was conducted by Illinois State Police Investigator Rodney Miller ("Investigator Miller"). On November 29, 1999, Investigator Miller, who is now deceased, interviewed Plaintiff about the allegations. Investigator Miller completed an investigative report on November 30, 1999, which extensively described his interview with the Plaintiff. Included in this report was a statement that: "[Plaintiff] advised [him that C.F.] recently admitted to police she had lied to them when she previously implicated [Plaintiff] in an arson." In addition to Investigator Miller's investigation of C.F.'s allegations, it appears that the Illinois Department of Children and Family Services ("DCFS") investigated C.F.'s allegations and also conducted an interview with Plaintiff. Additionally, as part of the DCFS investigation, C.F. was examined by Dr. Curtis Oddo. Dr. Oddo's examination did not discover any evidence of penetration. Dr. Oddo's examination was not included in the Illinois State Police's file relating to C.F.'s allegations. The Illinois State Police decided not to pursue charges against Plaintiff.

---

[1] The facts are taken from the parties' statements of undisputed facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record.

[2] There is no relation between C.F. and any of the Defendants, despite similar names.

In late 2000, a second child, A.B., made allegations that she had been sexually assaulted by the Plaintiff. Based upon this allegation, an investigation was initiated by Sheriff Cox of the Coles County Sheriff's Office. Sheriff Cox interviewed A.B. and found her to be very articulate, and believed that her allegation that she had been sexually assaulted by the Plaintiff was very credible. Sheriff Cox, at the time of his initial interview with A.B., was not aware that Plaintiff was the subject of a prior investigation by the Illinois State Police. Solely on the basis of this interview with A.B., Sheriff Cox believed that the Plaintiff sexually assaulted A.B.

After this initial interview with A.B., Sheriff Cox received a facsimile from Investigator Miller.[3] The facsimile included: (1) reports from Investigator Miller's investigation into the allegations made by C.F. about the Plaintiff; and (2) a cover sheet with a handwritten note from Investigator Miller referring to a false allegation of arson against the Plaintiff made by C.F. Specifically, the note stated:

> Please call if you have any questions. [C.F.] (victim) admitted to Mattoon Police in a previous interview on an unrelated investigation that she had falsely identified her stepfather (Billy Speagle) as the perp[etrator] on an arson.

Importantly, Sheriff Cox was not made aware of the physical examination of C.F. that was conducted by Dr. Oddo. Sheriff Cox and Investigator Miller never actually discussed C.F.'s allegations against the Plaintiff and Sheriff Cox never personally investigated C.F.'s allegations. At this point, Sheriff Cox completed his case file regarding A.B.'s allegations.

---

[3]There is no evidence, and Sheriff Cox has no recollection, of why Investigator Miller sent this material to Sheriff Cox.

This case file, which also included the information[4] from the Illinois State Police, was sent to the Coles County State's Attorney's Office.

## II. Coles County State's Attorney Office Involvement

The material sent to the Coles County State's Attorney's Office was initially reviewed by Ferguson, the elected State's Attorney of Coles County. After his initial review of the case file, Ferguson formed the belief that sufficient evidence existed to charge Plaintiff with sexually assaulting A.B. Ferguson, therefore, prepared an information charging Plaintiff based on A.B.'s allegations. On February 22, 2001, Plaintiff was charged by an information with three counts of sexual assault of a child in case #01-CF-109. After charging Plaintiff, Ferguson assigned case #01-CF-109 to Assistant State's Attorney Deters.

Shortly after charging Plaintiff, Ferguson became aware of C.F.'s prior allegations of sexual assault that had been investigated by Investigator Miller. Deters, after taking over case #01-CF-109, reviewed the Illinois State Police report made by Investigator Miller regarding C.F.'s allegations. Deters also had knowledge that DCFS investigated C.F.'s allegations and conducted an interview with Plaintiff regarding the allegations, although it is not clear how Deters became aware of this investigation. Deters did not subpoena documents relating to the DCFS investigation and never actually reviewed any DCFS documents. After reviewing the Illinois State Police report, Deters decided that there was probable cause to charge Plaintiff based on C.F.'s allegations. On May 11, 2001, Plaintiff was charged by an

---

[4]It is unclear whether or not this case file included the cover sheet with Investigator Miller's handwritten note. Although Sheriff Cox testified in his deposition that he did not intentionally remove the cover sheet from the file, it is unclear whether it actually was sent with the case file.

information with three counts of sexual assault of a child in case #2001-CF-300. Besides reviewing Investigator Miller's report and his awareness of the DCFS investigation, Deters did not conduct any further investigation into C.F.'s allegations prior to charging Plaintiff based on those allegations.[5] It is undisputed that Deters was, at least at this time, not aware of the medical examination of C.F. by Dr. Oddo.

### III.  Plea Negotiations & Plea Agreement

Prior to charging Plaintiff in the C.F. case, Deters had correspondence with Plaintiff's defense attorney, Jeannine Garrett ("Garrett"). Specifically, on April 30, 2001, Deters wrote a memo to Garrett stating that Plaintiff "deserves more punishment than a Class X [sentence] will allow. However, in order to spare the victim from trial, I can live with less than the maximum." On May 9, 2001, Deters wrote another memo to Garrett which included the following: (1) a statement to the effect that Deters had recently offered Plaintiff a deal of 25 years in return for a plea of guilty to the A.B. sexual assault; (2) a statement that Plaintiff had a juvenile record a mile long and that his adult criminal history was not much better; (3) a statement that Deters had information that Plaintiff had perpetrated the same offense on another little girl; and (4) that Plaintiff would know who the victim of the prior offense was because there was a DCFS investigation and Plaintiff was interviewed during that investigation.

Garrett received all materials, totaling approximately 642 pages, relating to the two

---

[5] For instance, **no** evidence has been offered that: (1) Deters interviewed C.F.; (2) Deters ordered any medical examination of C.F.; or (3) Deters interviewed any individual who might have information surrounding C.F.'s allegations.

cases against the Plaintiff that were in Deters' possession and discussed these materials with Plaintiff. Included in these materials was the Illinois State Police Report completed by Investigator Miller. Garrett also was informed that there was a DCFS investigation into C.F.'s allegations against the Plaintiff. During the course of her representation, Garrett informed the Plaintiff that if he was convicted of predatory criminal sexual assault in both cases that state law mandated that he be imprisoned for life without the possibility of parole. Deters and Garrett engaged in plea negotiations, and eventually it was agreed that Deters would dismiss the C.F. case in exchange for Plaintiff's guilty plea to two counts of predatory criminal sexual assault in the A.B. case. Plaintiff entered into an open plea based on this agreement, with his sentence to be determined by the court. At the time Plaintiff entered into this agreement, Plaintiff was aware that C.F. had allegedly lied to the police and falsely implicated him in an arson.

### IV.  Guilty Plea & Appeals

On July 10, 2001, Plaintiff pled guilty to two counts of predatory criminal sexual assault arising out of A.B.'s allegations (case #2001-CF-109). Pursuant to the plea agreement, the charges arising out of C.F.'s allegations (case #2001-CF-300) were dismissed at the time of Plaintiff's guilty plea. Although in other respects proper, the plea colloquy omitted an admonishment regarding a period of mandatory supervised release. Plaintiff was later sentenced to 30 years imprisonment in the Illinois Department of Corrections. After Plaintiff's sentencing, he moved to withdraw his guilty plea because he believed that he had agreed to a 23-year sentence. In September 2001, the trial court denied Plaintiff's motion to

withdraw his guilty plea.

Plaintiff appealed his conviction. On January 12, 2004, the Illinois Appellate Court vacated the Plaintiff's sentence and remanded the case to the trial court with instructions to impose two consecutive 15-year sentences, each with a three-year term of supervised release. On June 30, 2004, the trial court sentenced Plaintiff in accordance with these instructions. Plaintiff filed a second motion to withdraw his guilty plea and also filed a post-conviction petition. On April 5, 2007, the Illinois Appellate Court vacated the Plaintiff's guilty plea and permitted the Plaintiff to plead anew, restoring the parties to the positions they occupied prior to the original guilty plea of July 10, 2001. On July 22, 2009, Plaintiff was acquitted by a jury of all charges in both cases.

## PROCEDURAL BACKGROUND

On March 2, 2010, Plaintiff filed a Complaint (#1). After a Motion to Dismiss (#10) was filed and granted in part, Plaintiff filed an Amended Complaint (#20) on September 30, 2010. Plaintiff's Amended Complaint (#20) included the following counts: (1) a 42 U.S.C. § 1983 claim alleging that Defendants violated Plaintiff's procedural due process rights; (2) a malicious prosecution claim under Illinois law; (3) a respondeat superior claim against Coles County for all torts committed by its agents; (4) a claim that public entities must pay compensatory damages if employees are found liable for misconduct; (5) a § 1983 claim based on alleged failures to provide adequate medical care; and (6) a § 1983 claim based on alleged forced labor during Plaintiff's period of incarceration. On January 5, 2012, Plaintiff made an oral motion to dismiss Counts V and VI with prejudice. On the same day,

Magistrate Judge David G. Bernthal entered a text order granting Plaintiff's motion to dismiss Counts V and VI with prejudice.

On December 2, 2011, Defendants Ferguson and Deters filed a Motion for Summary Judgment (#52) on Counts I & II of Plaintiff's Amended Complaint (#20). On December 4, 2011, Defendants Cox, Sheriff's Office and Coles County filed a Motion for Summary Judgment (#53) on Counts I, III and IV of Plaintiff's Amended Complaint (#20). On January 31, 2012, Plaintiff filed Responses (#57, #58) to the Motions for Summary Judgment. On February 14, 2012, Defendants filed Replies (#59, #60) in support of the Motions for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F. Supp. 2d at 929 (citing Chmiel v. JC Penney Life

Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998)).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23. Conclusory allegations not supported by the record are not enough to withstand summary judgment. Basith v. Cook Cnty., 241 F.3d 919, 928 (7th Cir. 2001).

## ANALYSIS

### I. Count I—Procedural Due Process Violation

Plaintiff alleges in Count I of his Amended Complaint (#20) that his procedural due process rights were violated on the basis that Defendants Ferguson, Deters and Cox failed to disclose materials that were favorable to Plaintiff prior to his guilty plea, as required by Brady v. Maryland, 373 U.S. 83 (1963). Plaintiff brings his procedural due process claim under § 1983. Defendants argue that this court should grant summary judgment in their favor on this count because: (1) absolute prosecutorial immunity protects Defendants Ferguson and Deters for their conduct; (2) qualified immunity protects Defendant Cox for his conduct; and

(3) there was no violation of Plaintiff's constitutional rights.

A. *Defendants Ferguson and Deters (Prosecutors)*

Prosecutors are absolutely immune from civil liability under 42 U.S.C. § 1983 for prosecutorial actions, such as "initiating a prosecution and . . . presenting the State's case . . . ." Imbler v. Pactman, 424 U.S. 409, 431 (1976).  Absolute prosecutorial immunity, however, is only available where the function undertaken by a prosecutor is "intimately associated with the judicial phase of the criminal process." Id. at 430.  If a prosecutor is acting not as an advocate for the state, but rather as an investigator or administrator, the prosecutor's conduct is only protected by qualified immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). In determining whether absolute or qualified immunity applies to the actions of a prosecutor, the court applies a functional test which considers "the nature of the function performed, not the identity of the actor who performed it." Id. at 269.

The Supreme Court has explained that absolute immunity "applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." Van de Kamp v. Goldstein, 555 U.S. 335, 343 (2009) (internal citations omitted).  Prosecutorial absolute immunity is not limited to the bringing of charges and presentment of the state's case at trial—rather, it extends to "[p]reparation, both for the initiation of the criminal process and for a trial, [and] may require the obtaining, reviewing, and evaluating of evidence." Imbler, 424 U.S. at 431 n.33.  Alternatively, absolute immunity does not apply "when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a

complaining witness in support of a warrant application." <u>Goldstein</u>, 555 U.S. at 343. The Supreme Court has explained the distinction between functions protected by absolute and qualified immunity as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.

<u>Buckley</u>, 509 U.S. 273.

The burden of demonstrating that absolute immunity is justified for the function in question is on the officials seeking to utilize such immunity—Defendants Ferguson and Deters in this case. <u>See, e.g.</u>, <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991). Therefore, this court must consider whether the undisputed facts are sufficient to justify a finding that absolute prosecutorial immunity protects Defendants Ferguson and Deters from liability under § 1983 for alleged procedural due process violations.

Initially, in order to consider whether absolute immunity is appropriate in this case, this court must consider the specific claim Plaintiff is making regarding Defendants Ferguson and Deters' role in his case. <u>See id.</u> at 487 (explaining that it is important to determine the "precise claim" that is being made against the party claiming absolute immunity). Plaintiff alleges, in Count I, that his due process rights were violated because Defendants Ferguson and Deters manipulated, tampered with and withheld evidence. Although this allegation is not fully developed in Plaintiff's Amended Complaint (#20), in Plaintiff's Response (#57), he makes it clear that Count I is based solely on alleged <u>Brady</u> violations. Specifically, Plaintiff argues that there were two pieces of evidence which, under <u>Brady</u>, were required to

11

be disclosed prior to his guilty plea, but were not.  Plaintiff actually does not claim that Defendants Ferguson and Deters manipulated or tampered with evidence—solely that they withheld evidence.

It is undisputed that as a general rule, the suppression of evidence by a prosecutor is conduct protected by absolute immunity.  See, e.g., Imbler, 424 U.S. at 431.  The rationale for this general rule, as the Supreme Court has explained, is that the decision to turn over impeachment or exculpatory materials to the defense concerns evidence presented at trial, and therefore is appropriately considered "intimately associated with the judicial phase of the criminal process."  Goldstein, 555 U.S. at 345 (citing Imbler, 424 U.S. at 430).  In light of this general rule that a claim based on a failure to turn over impeachment or exculpatory evidence will be defeated by absolute immunity, Plaintiff argues that this general rule should not apply because Ferguson and Deters were allegedly acting in an investigatory function[6]—not a prosecutorial function—when they obtained (or should have obtained) the impeachment and exculpatory materials.

Plaintiff's argument fails.  The undisputed material facts in this case make it clear that Defendants Ferguson and Deters were acting in a prosecutorial function at all relevant times in this case.  Plaintiff's argument that they acted in an investigatory function is unsupported

---

[6]Plaintiff extensively discusses the administrative problems the Coles County State's Attorney's Office had relating to requesting exculpatory or impeaching materials from police departments.  However, Plaintiff discusses these problems in order to demonstrate why this court should find that a Brady violation occurred.  Plaintiff does not claim that the Coles County State's Attorney's Office supervision, training or information system management was constitutionally inadequate.  Even if Plaintiff's did make a claim on this basis, the Supreme Court has concluded that supervising prosecutors are protected by absolute immunity from such claims.  See Goldstein, 555 U.S. at 346-349.

by the facts or any reasonable inference. The undisputed facts reveal a situation where Defendants Ferguson and Deters simply **obtained** evidence from prior Illinois State Police and DCFS investigations into allegations relating to the Plaintiff.[7] Specifically, it is undisputed that Sheriff Cox, who personally had initiated an investigation into the allegation that Plaintiff sexually assaulted A.B., received a facsimile from Investigator Miller which contained reports from the Illinois State Police's prior investigation into C.F.'s allegations. When Sheriff Cox completed his case file pertaining to the sexual assault of A.B., he sent the entire case file to the Coles County State's Attorney's Office. This case file included all information relating to the Illinois State Police's prior investigation of the Plaintiff. Plaintiff was charged with the sexual assault of A.B. in February 2001 by Ferguson, who based this charging determination solely on the files received from Sheriff Cox. After Deters was assigned Plaintiff's case, he became aware of the prior C.F. allegations. From the evidence before this court, Deters had two sources alerting him to the C.F. allegations: (1) the Illinois State Police report (completed by Investigator Miller) that Sheriff Cox had received and forwarded on as part of the A.B. case file; and (2) the fact that DCFS also investigated C.F.'s allegations. After reviewing the Illinois State Police report, Deters decided to charge Plaintiff with a second case of predatory criminal sexual assault.

No evidence has been offered suggesting that either Ferguson or Deters: (1) interviewed any individual regarding C.F.'s allegations; (2) conducted any form of

---

[7]Plaintiff argues that this act of obtaining evidence could constitute an "independent investigation" if initiated by Deters or Ferguson, instead of the Illinois State Police or DCFS. This court disagrees. Obtaining evidence encompasses requesting evidence from prior investigations as well as receiving evidence without such a request.

investigation into the Illinois State Police report relating to C.F.'s allegations; (3) conducted any form of investigation into the DCFS investigation of C.F.'s allegations; or (4) took any action relating to C.F.'s allegations beyond reviewing the Illinois State Police report and having an awareness of the DCFS investigation. Although it is unclear, and therefore disputed, exactly why/how the Illinois State Police file was initially received by Sheriff Cox and subsequently Ferguson, it is undisputed that Deters reviewed the file, and after reviewing the file made the decision to charge Plaintiff in a second case with predatory criminal sexual assault of a child. This court will not speculate that any "investigation" was undertaken by Ferguson or Deters in the absence of any evidence that any such investigation occurred.

In conclusion, the undisputed facts make it clear that the conduct Plaintiff complains of by Defendants Ferguson and Deters—failing to turn over exculpatory/impeaching evidence—was undertaken in a prosecutorial function "intimately associated with the judicial phase of the criminal process." See Imbler, 424 U.S. at 431. Therefore, Defendants Ferguson and Deters are entitled to absolute immunity from Plaintiff's Count I § 1983 claim.

B. *Defendant Cox (Sheriff)*

A criminal defendant has his due process rights violated if the prosecution fails to turn over exculpatory or impeaching evidence to the defendant. Brady v. Maryland, 373 U.S. 83 (1963). This duty to disclose exculpatory or impeaching evidence does not extend only to prosecutors, it also "extends to the police and requires that they similarly turn over exculpatory/impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation." Carvajal v. Dominguez, 542 F.3d 561, 566 (7th Cir. 2008) (citations

omitted).  To establish a <u>Brady</u> violation, the plaintiff must establish the following three elements: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'"  <u>Id.</u> at 566–67.  Importantly, a <u>Brady</u> violation requires that the suppressed evidence must be unknown to the defendant.  <u>See, e.g.</u>, <u>United States v. Lee</u>, 399 F.3d 864, 865 (7th Cir. 2005).

The fax cover sheet at issue contained the following statement written by Investigator Miller to Defendant Cox:

> Please call if you have any questions. [C.F.] (victim) admitted to Mattoon Police in a previous interview on an unrelated investigation that she had falsely identified her stepfather (Billy Speagle) as the perp[etrator] on an arson.

This fax cover sheet is the impeachment material that forms the sole basis for Plaintiff's claims against Defendant Cox.  There is no dispute that Plaintiff and his attorney were aware that C.F. had falsely accused him of arson in a previous case.  Nevertheless, considering the facts in a light most favorable to the Plaintiff, it is possible that the statement on the fax cover sheet contained material different from Plaintiff's knowledge of the prior false allegation—namely the statement that C.F. **admitted** that she made a false allegation of arson.  However, this possibility is foreclosed by other evidence before this court.

The Illinois State Police report that was turned over to Plaintiff's attorney prior to his initial guilty plea contained a statement which demonstrates that Plaintiff was fully aware that C.F. had admitted to her false allegation of arson to police.  Specifically, the report stated

that "[Plaintiff] advised [the investigating officer that C.F.] recently admitted to police she had lied to them when she previously implicated [Plaintiff] in an arson." This statement, which was written by Investigator Miller in his police report completed on November 30, 1999, indicates that Plaintiff himself was a source of Investigator Miller's knowledge that C.F. had admitted to making false allegations. Even if this was not sufficient, Plaintiff's deposition in this case indicates that Plaintiff was fully aware of C.F.'s false allegations of arson against him and that receiving information that C.F. made this false allegation would not have affected his decision to plead guilty. Plaintiff's Dep. 76-77.

Nevertheless, even if this court found that Plaintiff was not aware of C.F.'s admission to police that she lied about the arson allegation, Plaintiff's constitutional rights were not violated in this case. The Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 633 (2002). In this case, it is clear that C.F.'s admission that she lied about Plaintiff's involvement in an unrelated arson is impeachment evidence (rather than exculpatory evidence of Plaintiff's actual innocence)—evidence which is governed by the holding in Ruiz. Plaintiff's sole counter to the impact of Ruiz on his claims is that the holding in Ruiz only applies where a criminal defendant relinquishes his right to receive material impeachment evidence as part of the plea agreement. Plaintiff cites no legal support for this argument—likely because there is no support for limiting the holding in Ruiz to such cases. Rather, the language used by the Supreme Court in Ruiz makes it clear that the holding was focused on a broad constitutional

question, rather than a limited holding for a specific set of facts. Id. at 629 ("We must decide whether the Constitution requires that preguilty plea disclosure of impeachment information. We conclude that it does not."). Therefore, this court finds that Plaintiff had no constitutional right to receive the fax cover sheet that contained material impeachment evidence prior to his guilty plea.

Because this court has concluded that Cox's alleged failure to turn over the fax cover sheet was not a constitutional violation, Cox is entitled to qualified immunity from civil damages in this case. See, e.g., Pearson v. Callahan, 555 U.S. 223, 232 (2009) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

## II.  Count II—Malicious Prosecution

Plaintiff alleges in Count II of his Amended Complaint (#20) that he was improperly subjected to judicial proceedings for which there was no probable cause. Count II was brought as a malicious prosecution claim under Illinois state law. Defendants Ferguson and Deters argue that this claim is barred by the quasi-judicial immunity prosecuting attorneys are afforded under Illinois law. Illinois law affords prosecutors acting within the scope of their prosecutorial duties absolute immunity. See, e.g., Aboufariss v. City of De Kalb, 713 N.E.2d 804, 812 (Ill. App. 1999). There is some division on the issue of whether or not an allegation of malice by the prosecutor destroys a claim of absolute immunity. Gordon v. Devine, 2008 WL 4594354, *16 (N.D. Ill. 2008) (listing cases). In Gordon, the court adopted an approach that absolute immunity applies even if the prosecutor acts with malice.

Gordon, 2008 WL at *17.  Similarly, in Hughes v. Krause, 2008 WL 2788722 (N.D. Ill. 2008), the court explained that immunity afforded prosecutors does not have a lack of malice requirement.  Hughes v. Krause, 2008 WL 2788722 (N.D. Ill. 2008) ("Although under Illinois law there is a doctrine of public official immunity which has a lack of malice requirement, such is not the immunity afforded prosecutors.  Prosecutors, like judges, must be allowed to perform the functions of their jobs fearlessly and without fear of consequence.").

Count II is based on an alleged decision—the decision to charge Plaintiff allegedly without probable cause—that clearly falls under the shield of absolute immunity.  See, e.g., Smith v. Power, 346 F.3d 740, 742 (7th Cir. 2003) (citation and quotation omitted) ("[A]bsolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.").  Even if this court believed that prosecutorial immunity, under Illinois law, had a lack of malice requirement, this court finds that absolute immunity would still be available because there is no evidence of malice.[8]  Therefore, Defendants Ferguson and Deters are absolutely immune from Plaintiff's state law claim of malicious prosecution.

### III. Counts III & IV—Respondeat Superior & Indemnification

Plaintiff alleges in Count III of his Amended Complaint (#20) that Defendants Ferguson, Deters and Cox were all employees of Coles County and therefore Defendant

---

[8]Plaintiff, in his Response (#57), simply claimed that "malice is demonstrated by Deters' memos to Jeanine Garrett, particularly the April 30 and May 9 memos." Deters' comments in those memos lack any suggestion that he decided to charge Plaintiff with a second sexual assault based on an improper purpose.

Coles County is liable as principal for all torts committed by these agents.  Similarly, Count IV is based on Illinois law which provides that public entities are required to indemnify a victim of tortious activities by employees.  Counts III and IV both require that one of the Defendants—Ferguson, Deters or Cox—are liable to the Plaintiff in this case.  See 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").  Because this court has already determined that Defendants Ferguson, Deters and Cox are not liable for their involvement in Plaintiff's prosecution, summary judgment must be granted on Counts III & IV.

    IT IS THEREFORE ORDERED THAT:

    (1) Defendants' Motion for Summary Judgment [52] is GRANTED.

    (2) Defendants' Motion for Summary Judgment [53] is GRANTED.

    (3) The clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Federal Rules of Civil Procedure 56.  This case is terminated in its entirety.

    ENTERED this 27th day of March, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE